IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| NB LOFT VUE, DST, *ET AL.*, | § § § | Case No. 21-32292 |
| Debtors. | § § § | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEMS AND MAINTAIN EXISTING BANK ACCOUNTS AND (B) MAINTAIN EXISTING BUSINESS FORMS, (II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. A hearing will be conducted on this matter on July 22, 2021, at 2:30 p.m. (prevailing Central Time) in the Courtroom located at Courtroom 404, 515 Rusk, Houston, Texas 77002. You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Isgur. Under "Electronic Appearance," select "Click here to submit Electronic Appearance." Select the case name, complete the required fields, and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested no later than July 22, 2021.**

COME NOW the above-captioned debtors and debtors in possession, NB Loft Vue, DST ("Loft Vue") and NB Vue Mac, DST ("Vue Mac," and together with Loft Vue, the "Debtors") and file their *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management Systems and Maintain Existing Bank Accounts and (B) Maintain Existing Business Forms, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* (the "Motion"), in support of which they would respectfully show as follows:

### RELIEF REQUESTED

1. The Debtors seek entry of interim and final orders, substantially in the form attached hereto (the "Proposed Interim Order") (a) authorizing the Debtors to (i) continue to operate their Cash Management Systems (as defined herein) and maintain their existing bank accounts, including honoring certain prepetition obligations related thereto and (ii) maintain existing Business Forms (as defined herein), (b) scheduling a final hearing, and (c) granting related relief.

2. In addition, the Debtors request that a final hearing be scheduled within approximately 21 days of the date of the interim hearing on this Motion, or as soon thereafter as is convenient, to consider approval of this Motion on a final basis and that, should there be no objection prior to [date], that the Court enter a final order without the need for hearing.

### JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 345, 363, 364(b), and 503(b) of the Bankruptcy Code, rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules").

## BACKGROUND

### A. GENERAL BACKGROUND

5. On July 6, 2021 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Patrick Nelson in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[1] filed contemporaneously with this Motion and incorporated by reference herein.

6. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

### B. THE CASH MANAGEMENT SYSTEMS

7. In the ordinary course of business, each of the Debtors maintain a cash management system (the "Cash Management Systems"), comparable to the cash management systems used by similarly situated enterprises, to manage their cash in a cost-effective, efficient manner. The Cash Management Systems facilitate the timely and efficient collection, management, transfer, and disbursement of funds used in the Debtors' businesses. The current Cash Management Systems

---

[1] Capitalized terms used but not otherwise defined in this Motion have the meaning ascribed to them in the First Day Declaration.

have been utilized by the Debtors for years leading up to the Petition Date. The Cash Management Systems are overseen by the in-house accounting professionals of Nelson Partners Professional Real Estate ("NPPRE") (who provides most of the back-office functions for the Debtors) who implement cash management controls for entering, processing, and releasing funds for the Debtors. NPPRE's in-house accounting professionals regularly reconcile the Debtors' books and records to ensure that all transfers are properly accounted for. Any disruption to the Cash Management Systems would have an immediate adverse effect on the Debtors' businesses and operations to the detriment of the Debtors' estates and all of the Debtors' stakeholders and creditors.

    **i.    Bank Accounts**

8.    As of the Petition Date, the Cash Management Systems include a total of seven (7) active bank accounts (collectively, the "Bank Accounts"), each of which is identified below. The Bank Accounts reside at Citizens Community Bank (the "Cash Management Bank" or "Bank"). The following table summarizes the Bank Accounts and Cash Management Systems residing at the Cash Management Bank:

| Debtor | Cash Management Bank | Cash Management Systems | Account Number Ending |
|---|---|---|---|
| Loft Vue | Citizens Community Bank | Operating Account | 3452 |
| | | Security Deposits and Sources | 3657 |
| | | Distributions | 3797 |
| Vue Mac | Citizens Community Bank | Operating Account | 7614 |
| | | Security Deposits | 7665 |
| | | Distributions | 1972 |
| | | Sources | 1778 |

9.    The *Guidelines for Debtors-in-Possession* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an approved depository that agrees to comply with the requirements of the Office of the

United States Trustee for the Southern District of Texas (the "U.S. Trustee"). The Debtors' current Cash Management Bank is not an approved depository.

11. However, the Debtors believe that the Cash Management Bank is well capitalized and financially stable and therefore well positioned to perform the depository and cash management functions required by the Debtors during these chapter 11 cases. To ensure their businesses continue to operate without interruption, the Debtors desire to maintain their existing Bank Accounts to disburse funds to employees and vendors on a timely basis.

C. **BUSINESS FORMS**

11. As part of the Cash Management Systems, the Debtors use a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business forms) in the ordinary course of business (collectively, the "Business Forms"). The Debtors also maintain books and records to document their financial results and a wide array of operating information (collectively, the "Books and Records"). The U.S. Trustee Guidelines require that the Cash Management Bank print "Debtor in Possession" and the bankruptcy case number on checks issued after the Petition Date. To avoid a significant disruption to their business operations and to minimize administrative expense to their estates, the Debtors request authorization to continue using all of the Business Forms and Books and Records in a manner consistent with prepetition practice.

**BASIS FOR RELIEF**

D. **THE DEBTORS' CONTINUED USE OF THE CASH MANAGEMENT SYSTEM IS ESSENTIAL TO THE DEBTORS' OPERATIONS AND RESTRUCTURING EFFORTS**

12. The Court should approve the Debtors' continued use of the Cash Management Systems. The Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). An order that

authorizes "the debtor to utilize a routine cash management system . . . is entirely consistent" with section 363(c)(1). *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985). Courts routinely grant such requests, recognizing that "a combined cash management system . . . allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992). Maintaining the current Cash Management Systems will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts, avoiding administrative inefficiencies, and allowing the Debtors' treasury and accounting employees to focus on their daily responsibilities.

13. By contrast, requiring the Debtors to adopt a new, segmented cash management system "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993). The Cash Management Systems provide the Debtors with the ability to instantaneously track and report the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds. Any disruption to the Cash Management Systems would needlessly reduce the value of the Debtors' business enterprise and could have severe and adverse effects on the Debtors' restructuring efforts.

14. Parties in interest will not be harmed by the Debtors' maintenance of the Cash Management Systems, including maintenance of the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations. The Debtors have internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' in-house

accounting professionals. The Debtors will continue to work closely with the Bank to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval. In light of such protective measures, maintaining the Cash Management Systems is in the best interests of their estates and creditors.

E.  **CAUSE EXISTS FOR WAIVING CERTAIN OF THE U.S. TRUSTEE GUIDELINES**

15. The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts at depositories approved by the U.S. Trustee; (b) open new accounts for the payment of payroll and other taxes; (c) use new business forms indicating the debtor in possession status of the chapter 11 debtor; and (d) make all disbursements of estate funds only from the new approved debtor in possession accounts. As above, requiring the Debtors to implement these changes would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and reorganize in an efficient manner. *See, e,g.*, *In re Gaylord Container Corp.*, No. 92-13894B, 1993 Bankr. LEXIS 724, at *1 (Bankr. E.D. La. Jan. 5, 1993) (adopting debtor's proposed findings of fact, including that the debtor "was severely restricted in the operation of its cash management system by many strict rules and requirements of the [U.S. Trustee, which] rules represent a substantial burden on any debtor"). If the Debtors' ability to continue conducting transactions consistent with historical practices is impaired, the Debtors may be unable to perform their obligations under certain contracts, their business operations may be unnecessarily disrupted, and their estates will incur additional unnecessary costs.

16. <u>Bank Accounts</u>. Given the geographic scope of the Debtors' operations and cash management requirements, and the need to avoid having to make wholesale changes to the Cash Management Systems right when students are about to return to school (and to the Debtors' buildings), constraining the Cash Management Systems to the narrow group of financial

institutions approved in the U.S. Trustee Guidelines is not practical or beneficial to the Debtors' estates. The Cash Management Systems are critical to the ongoing stability of the Debtors' business and their transition into chapter 11. Requiring the Debtors to transfer any of the Bank Accounts at a non-approved depository to a designated authorized depository would place a needless and excessive administrative burden on the Debtors and impose significant, value destructive costs to the Debtors' estates.

17. The Cash Management Bank is FDIC-insured division of Glacier Bancorp (a regional bank holding company with 193 branches in the western and northwestern United States with $20 billion of assets) and serves an integral role in the Cash Management Systems. The Debtors respectfully request that the Court authorize the Cash Management Bank to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business. *See, e.g.*, *In re Serv. Merch. Co.*, 240 B.R. 894, 896–97 (Bankr. M.D. Tenn. 1999) (finding "cause" to waive section 345(b) requirements in case involving "large, sophisticated debtors with a complex cash management system"). In this regard, the Cash Management Bank should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Cash Management Bank only to the extent authorized by order of the Court.

18. <u>Prepetition Transactions</u>. The Debtors further request that the Court authorize the Cash Management Bank to accept and honor all representations from the Debtors as to which

checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent the Cash Management Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; or (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, the Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition. Such relief is reasonable and appropriate because the Cash Management Bank is not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

19. <u>Business Forms</u>. To avoid disruption to the Cash Management Systems and the incurrence of unnecessary expenses, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Date. Given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced by this relief. Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing the Business Forms, such as letterhead, is unnecessary and would be an unnecessary additional expense and unduly burdensome. If the Debtors exhaust their existing supply of checks during these chapter 11 cases, the Debtors will print or order checks with the designation "Debtor in Possession" and the corresponding bankruptcy number.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

20. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

21. Nothing contained in this Motion is or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against the Debtors; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a finding that any particular claim is an administrative expense claim or other priority claim; (f) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**EMERGENCY CONSIDERATION**

22. The Debtors request emergency consideration of this Motion pursuant to Local Rule 9013-1(i) and Bankruptcy Rule 6003, which empower the Court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these chapter 11 cases could severely disrupt the Debtors' operations at

this critical juncture and imperil the Debtors' restructuring. The Debtors have satisfied the standards of Local Rule 9013(1)(i) and Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

### NOTICE

23. The Debtors will provide notice to parties in interest, including: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against each of the Debtors on a consolidated basis; (c) all secured creditors of the Debtors; (d) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002; (f) counsel for any of the foregoing, to the extent known; (g) the Cash Management Bank. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Proposed Interim Order in substantially the forms attached hereto, (b) schedule a final hearing, and (c) grant the Debtors such other and further relief to which they may show themselves justly entitled.

RESPECTFULLY SUBMITTED this July 19, 2021.

        **MUNSCH HARDT KOPF & HARR, P.C.**

        By: */s/ Thomas Berghman*
            Thomas D. Berghman, Esq.
            Texas Bar No. 24082683
            500 North Akard St., Ste. 3800
            Dallas, Texas 75201
            Telephone: (214) 855-7500
            Facsimile: (214) 978-4375

            tberghman@munsch.com

and

**TUCKER ELLIS LLP**

Thomas R. Fawkes, Esq.
(*pro hac vice*)
233 S. Wacker Dr. Suite 6950
Chicago, Illinois 60606
Telephone: (312) 256-9425
Facsimile: (312) 624-6309
thomas.fawkes@tuckerellis.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Accuracy**

Pursuant to Local Rule 9013-1(i), I certify that the foregoing statements are true and accurate to the best of my knowledge, information, and belief.

                                              */s/ Thomas R. Fawkes*
                                              Thomas R. Fawkes, Esq.